UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOQUETTE N. WEYERMAN,

        Plaintiff,                                  Case No. 1:24-cv-285

v.                                                     Hon. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB and SSI on January 11, 2022, alleging a disability onset date of August 1, 2021.  PageID.37.  Plaintiff identified 12 disabling conditions.[1] Plaintiff completed the 12th grade and had past relevant work as a cashier, fast food worker, waitress, administrative clerk, and home attendant.  PageID.50-51.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 22, 2023.  PageID.37-53.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Plaintiff listed the following: PTSD; hearing loss; plantar fasciitis; DDD; arthritis; gastro reflux disease; depression; panic attacks; anxiety; night terrors; insomnia; and, fibromyalgia.  PageID.289.

## I.     LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.[2]  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 1, 2021, and that she meets the insured status requirements of the Social Security Act through June 30, 2026.  PageID.40. At the second step, the ALJ found that plaintiff has severe impairments of: degenerative disc disease (DDD) of the cervical and lumbar spine; carpal tunnel

---

[2] At step four, the ALJ found that "I find that the claimant is able to perform the admirative [sic] clerk job, as it is generally performed in the national economy and as the claimant actually performed it. As such, the claimant is not disabled." PageID.51. At that point, plaintiff was determined to be not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  However, the ALJ proceeded to step five where she made a further determination that "[i]n addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform . . ."  *Id*. The Court finds no authority for an ALJ to find a claimant disabled at step four and then make an unnecessary determination of disability at step five. Here, the ALJ was required to end the evaluation at step four and find that plaintiff was not disabled:

> (4) *The five-step sequential evaluation process*. The sequential evaluation process is a series of five 'steps' that we follow in a set order. See paragraph (h) of this section for an exception to this rule. **If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.** If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.  These are the five steps we follow: . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. **If you can still do your past relevant work, we will find that you are not disabled.** See paragraphs (f) and (h) of this section and § 404.1560(b).

20 C.F.R. § 404.1520(a)(4)(iv) and d 416.920(a)(4)(iv) (emphasis added).  *See, e.g., Patricia T. v. Kijakazi*, No. 21-CV-1028 (GMH), 2022 WL 3583634 at *2, fn. 5 (D.D.C. Aug. 22, 2022) ("If the claimant can perform his or her past relevant work, a finding of 'not disabled' is required.") (citing 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv)). Because the ALJ's determination at step five is not authorized by the regulations, the Court will not address that finding.

4

syndrome status post-surgical release procedures; osteoarthritis of the bilateral knees; asthma; chronic obstructive pulmonary disease ("COPD"); chronic pain syndrome; and fibromyalgia. PageID.40. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.43.

> The ALJ decided at the fourth step that:
>
> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to frequent handling and fingering with the bilateral upper extremities. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid all exposure to dangerous moving machinery, uneven terrain, and vibration. The claimant must avoid all exposure to extreme cold, heat, and humidity. The claimant must avoid concentrated exposure to environmental irritants (such as fumes, dusts, gases, and odors) or poorly ventilated areas. The claimant requires the use of a single, handheld assistive device for ambulation.

PageID.45. The ALJ also found that plaintiff is capable of performing her past relevant work as an administrative clerk. PageID.50. This work does not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC). *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2021 (the alleged onset date) through June 22, 2023 (the date of the decision). PageID.52-53.

### III.    DISCUSSION

Plaintiff set out a single error:

> **The ALJ's RFC determination is not supported by substantial evidence where the ALJ did not provide valid reasons to disregard plaintiff's subjective testimony.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. §§ 404.1545; 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. §§ 404.1545 and 416.945) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

Plaintiff contends that the ALJ did not properly address her subjective complaints and symptoms. When a claimant alleges disabling symptoms, the ALJ follows a two-step process for evaluating those symptoms. "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms" and, "[w]e evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 at *3-4 (Oct. 25, 2017). *See* 20 C.F.R. §§ 404.1529(c)(1) and (2); 416.929(c)(1) and (2).

The Commissioner also considers other evidence including:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

Here, the ALJ summarized plaintiff's complaints as follows:

The claimant alleges disability due to PTSD, hearing loss, planter fasciitis, degenerative disc disease, arthritis, GERD, depression, panic attacks, anxiety, night terrors, insomnia, and fibromyalgia (B3E/2). Through her Adult Function Report, the claimant noted difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks and concentration. In addition, while the claimant alleged problems sleeping, dressing herself, bathing independently, doing yardwork, enjoying hobbies, being in large groups, following spoken instructions, and handling stress and changes in routine, she also alleged being able to care for her hair, feed herself, use the toilet, remember to take medications, prepare meals, vacuum, makes beds, sweep, water plants, drive a car, ride in a car, go out alone, shop in stores, pay bills, count change, handle a savings account, use a checkbook, socialize with others, attend church services, and follow written instructions (B11E/1-8). At the hearing, the claimant alleged she cannot work due to pain in her back, neck, knees, and ankles, as well as GERD symptoms, migraine headaches, asthma, and panic attacks when around large groups. The claimant testified she can only stand for 10 minutes, walk ½ block, and drive for 10 minutes. Furthermore, the claimant testified that she has poor sleep, that she needs to use her inhalers and nebulizer every day, and that she has a cane that she has used every day for about 2 years. As for her headaches, the claimant testified she gets severe headaches 2-3 times per week that last 3-4 hours that she controls with Excedrin, but that about 3-4 times per year her migraines cause her to have to lay down in a dark/quiet room for a few days. Regardless the claimant testified that she is able to go to yard sales with her friend every other day as well (testimony).

PageID.46.

The ALJ concluded that,

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

PageID.47.  The ALJ further explained:

After careful review of the entire record, I find that the claimant's allegations of the duration and intensity of her impairments is only partially consistent with the objective medical evidence of record. The claimant clearly has impairments that would cause more than minimal limitations in her ability to perform work related activities. However, the limitations corresponding to these impairments would not be entirely work preclusive. The claimant has been diagnosed with bilateral carpal tunnel syndrome and undergone left carpal tunnel

7

syndrome release and left trigger finger release procedures. While she still demonstrated some left wrist tenderness and complained of pain at times, at one of the more recent appointments she was found to have normal range of motion, normal strength, and normal sensation in the left wrist as well. Regarding the claimant's cervical and lumbar spine disorders, she underwent only conservative treatment for these impairments. EMG testing also revealed no signs of cervical radiculopathy. Regardless, the claimant was afforded a cane and limited postural functionality in her residual functional capacity to assist with any back related pain and impairment. Similarly, the claimant only underwent conservative treatment for her bilateral knee arthritis as well and the x-ray imaging does not reveal and significant abnormalities. The record also contains diagnosis of chronic pain syndrome and fibromyalgia, which were also considered in reducing the claimant's residual functional capacity. As for the claimant's COPD and asthma, she has demonstrated some negative respiratory findings at times but has continued to smoke cigarettes despite being instructed that it exacerbates her conditions. Nevertheless, at an appointment in March 2023, the claimant demonstrated normal respiratory findings and records indicate that her COPD and asthma had been stabilized with medications. Simply put, the objective medical evidence in the file does not warrant more severe limitations in the claimant's ability to perform work than those already included in the residual functional capacity assessment above. Moreover, at times in the record, the claimant endorsed being able to care for her hair, feed herself, use the toilet, remember to take medications, prepare meals, vacuum, makes beds, sweep, water plants, drive a car, ride in a car, go out alone, shop in stores, pay bills, count change, handle a savings account, use a checkbook, socialize with others, attend church services, follow written instructions, and go to yard sales with friends every other day.

It should also be noted that at no point in the record do any of the claimant's treating physicians submit opinion evidence warranting a more restrictive vocational capacity assessment than the residual functional capacity assessment contained in this decision.

Based upon these findings, I conclude that the evidence regarding the claimant's impairments, while sufficient to warrant some degree of vocational restriction, does not support a finding that she is unable to perform a reduced range of light work activity as set forth in the above-referenced residual functional capacity assessment.

PageID.50.

Plaintiff's brief has presented a lengthy narrative which includes various arguments claiming that the ALJ failed to credit her testimony. Plaintiff's narrative disputing the ALJ's evaluation is essentially asking the Court to engage in a de novo review of the evidence to

determine whether it supports each of plaintiff's claims. This Court does not perform a de novo review of the evidence. *Brainard*, 889 F.2d at 681. In addition, even if the Court would resolve the dispute differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence, *Young*, 925 F.2d at 147. In short, the Court declines to perform an independent review of the record to determine whether the ALJ properly evaluated each subjective complaint that plaintiff may have raised. That being said, it appears that plaintiff has raised two general areas of concern.

### A. Plaintiff's back and knee problems

Plaintiff contends that the ALJ rejected plaintiff's cervical and lumbar spine disorders and bilateral knee arthritis because she received conservative treatment and did not consider that the treatments did not alleviate her pain. Plaintiff's Brief (ECF No. 9, PageID.1198-1199). Plaintiff also states,

> [I]n addition to evidence of Plaintiff's abnormal gait, *supra*, the record reflects that Stacia Lagarde, M.D., stated on March 17, 2023 that "C-spine and L-spine CT's done thru ER on 3/14/23 with moderate DHD, DDD, foraminal stenosis, and spinal stenosis. There was a L4-5 disc bulge." PageID.1118. The record also indicates that Plaintiff had decreased range of motion with her back and knees. PageID.441, 764, 1005, 1107, 1145-1146. The ALJ does not explain how this objective evidence is inconsistent with Plaintiff's complaints of difficulty standing and walking and her chronic pain.

*Id*. at PageID.1203-1204. In this regard, plaintiff states,

> The ALJ also failed to include any limitations in standing and walking despite Plaintiff's testimony that "prolonged standing" increased her levels of pain. PageID.45. This is error.

*Id*. at PageID.1200.

The Court concludes that the ALJ evaluated plaintiff's symptoms under the two-step process and addressed plaintiff's subjective complaints in detail. *See* PageID.46, 50. Plaintiff's disagreement with the ALJ's evaluation does not create an error requiring reversal.

9

With respect to conservative treatment, the Sixth Circuit has found that such treatment is sufficient to discount allegations of disability. *See, e.g.*, *Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 631 (6th Cir. 2016) ("The ALJ noted that the records indicate [the claimant] received only conservative treatment for her ailments, a fact which constitutes a 'good reason' for discounting a treating source opinion"); *Lester v. Commissioner of Social Security*, 596 Fed. Appx. 387, 389 (6th Cir. 2015) (the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment). *See also, O'Brien v. Commissioner of Social Security*, 819 Fed. Appx. 409, 417 (6th Cir. 2020) ("we have often concluded that ALJs properly discounted the opinions of treating physicians where the opinions were incompatible with the claimant's generally conservative course of treatment or activities of daily living") citing *Kepke*, 636 Fed. Appx. at 631 and *Lester*, 596 Fed. Appx. at 389.

Finally, the ALJ acknowledged some of plaintiff's subjective complaints by including a number of restrictions in the RFC such as: only occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; avoiding all exposure to dangerous moving machinery, uneven terrain, and vibration; and requiring the use of a single, handheld assistive device for ambulation. PageID.45.[3] Accordingly, this claim of error should be denied.

---

[3] Plaintiff described her need for the cane as follows:

> Q   The use of the cane, what does it help with when you use it?
>
> A   It helps to keep me stable when I'm walking and I've actually caught myself from falling out in the road when I tripped to oncoming traffic.
>
> Q   What about if you had to stand for a long time, do you need the cane for that?
>
> A   Yes. It keeps me from falling over.

PageID.79.

### B. Plaintiff's daily activities

Plaintiff also contends that the ALJ incorrectly stated that plaintiff "go[es] to yard sales with friends every other day." PageID.50. At the administrative hearing, plaintiff provided the following responses:

> Q	During a typical day, what do you like to do?
>
> A	Play with my Chihuahua, go to yard sales, go visit friends.
>
> Q	And, how often are you able to go to yard sales or visit friends?
>
> A	My friends, every other day.

PageID.77.

Plaintiff's response is incomplete. While plaintiff identified going to yard sales and visiting friends as activities on a typical day, she did not explicitly respond to the frequency of going to yard sales. While the ALJ may have misinterpreted plaintiff's incomplete response to the question, the plaintiff identified going to yard sales as a something she did on a "typical day". The Court construes such a statement as meaning an activity that plaintiff does on a regular basis. The ALJ's potential error regarding the frequency on which plaintiff goes to garage sales is not determinative of her disability claim. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, this claim of error should be denied.

## IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  February 25, 2025                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).